

"UNDER SEAL"

FILED
CHARLOTTE, NC

NOV 15 2022

US DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO.: 3:22CR267 |
| | ) | |
| | ) | BILL OF INDICTMENT |
| v. | ) | |
| | ) | Violations: |
| | ) | |
| TERRELL ALEXANDER HAGER, JR. | ) | 18 U.S.C. § 1349 |
| | ) | 18 U.S.C. § 1708 |
| | ) | |

THE GRAND JURY CHARGES:

At the specified time and at all relevant times:

### Introduction

1. The defendant, TERRELL ALEXANDER HAGER, JR. ("HAGER"), along with others known and unknown to the Grand Jury, engaged in a bank fraud conspiracy involving stolen checks. During the fraud scheme, HAGER and his co-conspirators deposited checks stolen from the mail into bank accounts and withdrew the funds before the banks discovered the checks were stolen. During the conspiracy, HAGER and his co-conspirators deposited more than $27,000 in counterfeit checks and money orders. In addition, from October 2021 through the date of this Indictment, HAGER served as the administrator and owner of a Telegram channel that sold over 400 checks with a total face value over $7.3 million that were stolen from the custody of the U.S. Mail in Charlotte, North Carolina.

### The Bank Fraud Scheme

2. Beginning as early as in or about August 2021 and continuing through the date of this Indictment, HAGER conspired with others, known and unknown to the Grand Jury, to operate a bank fraud scheme to obtain money under the custody and control of various financial institutions through false and fraudulent pretenses. HAGER and his co-conspirators conducted the fraud scheme in and around Charlotte, North Carolina.

3. The scheme to defraud the victim financial institutions and others generally operated as follows:

   a. HAGER obtained stolen checks from the custody of the U.S. Postal Service in Charlotte, North Carolina.

   b. HAGER recruited additional individuals ("funnel bank account holders") with bank accounts so HAGER could use the bank accounts ("funnel bank accounts") to

1

deposit stolen checks. The funnel bank accounts were opened at financial institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation (FDIC) and the National Credit Union Share Insurance Fund, including Truist.

      c.      After the financial institutions credited the funnel bank accounts with funds from the stolen checks, HAGER and his co-conspirators withdrew cash from ATMs and peer-to-peer payment applications before the victim financial institution discovered the fraud.

### Examples of Acts in Furtherance of the Bank Fraud Scheme

4.      On multiple occasions in March 2022, HAGER deposited stolen checks via ATMs into the Truist funnel bank account of J.A. The deposits occurred in Charlotte, North Carolina. For example:

      a.      On March 17, 2022, HAGER deposited a stolen check made payable to Victim Company G.P. totaling $5,000.00. The deposit was made via an ATM in Charlotte, North Carolina.

      b.      On or about March 18, 2022, HAGER deposited a stolen check made payable to Victim Company D.I. totaling $2,660.19. The deposit was made via an ATM in Charlotte, North Carolina.

      c.      On or about March 18, 2022, HAGER deposited a stolen check made payable to Victim Company K.G. totaling $2,870.98. The deposit was made via an ATM in Charlotte, North Carolina.

      d.      On or about March 21, 2022, HAGER deposited a stolen check made payable to Victim Company S.B. totaling $3,320.75. The deposit was made via an ATM in Charlotte, North Carolina.

      e.      On or about March 21, 2022, HAGER deposited a stolen check made payable to Victim Company P.P. totaling $6,732.20. The deposit was made via an ATM in Charlotte, North Carolina.

      f.      On or about March 23, 2022, HAGER deposited a stolen check made payable to Victim Company C.I. totaling $6,420.00. The deposit was made via an ATM in Charlotte, North Carolina.

### The Telegram Channel Scheme

5.      Beginning as early as in or about October 2021, and continuing through at least November 2022, HAGER, using the moniker "Toomuchsauce45", operated as the primary owner and administrator of the Telegram channel called "Hunnitband Swipe School." The channel posted images of checks from Charlotte, North Carolina, that had been stolen from the custody

of the U.S. Postal Service. As of November 2022, the channel had posted over 400 checks with a total face value over $7.3 million.

6. Customers of the "Hunnitband Swipe School" Telegram channel bought images of the stolen checks to obtain the routing and account numbers from the checks. By obtaining the routing and account numbers, customers could print new, counterfeit checks and deposit them into other straw accounts.

7. In June 2022, law enforcement, while operating in an undercover capacity, purchased a $2,497.94 check from Hager for $250. The check was made payable to Victim Company C.F. of Charlotte, North Carolina. HAGER provided the Cash App address "$hunnitbadtee3" for payment. Once HAGER received payment, HAGER provided law enforcement a full unredacted picture of the check.

## COUNT ONE
## (Conspiracy to Commit Bank Fraud – 18 U.S.C. § 1349)

8. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 7 of the Bill of Indictment, and further alleges that:

9. Beginning as early as in or about August 2021 and continuing to in or about the date of this Indictment, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

## TERRELL ALEXANDER HAGER, JR.

did knowingly combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to commit offenses against the United States, to wit, bank fraud, in violation of Title 18, United States Code, Section 1344(2).

### Object of the Conspiracy

10. It was the object of the conspiracy that HAGER, and others known and unknown to the Grand Jury, devised and executed a scheme to defraud and to obtain moneys owned by, and in the custody or control of one or more financial institutions, whose deposits were insured by the Federal Deposit Insurance Corporation, by means of materially false and fraudulent representations and promises.

### Manner and Means

11. HAGER and others known and unknown to the Grand Jury, carried out the conspiracy in the manner and means described in paragraphs 1 through 7 of this Bill of Indictment, among others.

All in violation of Title 18, United States Code, Section 1349.

3

## COUNTS TWO THROUGH EIGHT
### (Possession of Stolen Mail Matter – 18 U.S.C. § 1708)

12. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 7 of the Bill of Indictment, and further alleges that:

13. On or about the dates set forth below, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

### TERRELL ALEXANDER HAGER, JR.

did buy, receive or unlawfully have in his possession, any letter, postal card, package, bag or any article or thing contained therein, specifically the stolen check described in the chart below, which has been stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted:

| COUNT | Date | Stolen Check |
|---|---|---|
| Two | 3/17/2022 | Check to Victim Company G.P. for $5,000.00 |
| Three | 3/18/2022 | Check to Victim Company D.I. for $2,660.19 |
| Four | 3/18/2022 | Check to Victim Company K.G. for $2,870.98 |
| Five | 3/21/2022 | Check to Victim Company S.B. for $3,320.75 |
| Six | 3/21/2022 | Check to Victim Company P.P. for $6,732.20 |
| Seven | 3/23/2022 | Check to Victim Company C.I. for $6,420.00 |
| Eight | 5/26/2022 | Check to Victim Company C.F. for $2,497.94 |

All in violation of Title 18, United States Code, Sections 1708 and 2.

## NOTICE OF FORFEITURE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

    a. All property which constitutes or is derived from proceeds of the violations set forth in this Bill of Indictment; and

    b. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

The Grand Jury finds probable cause that the following property is subject to forfeiture on one or more of the grounds set forth above: a forfeiture money judgment in the amount of at least $20,834.12, such amount constituting the proceeds of the offenses set forth herein.

A TRUE BILL:

_____
FOREPERSON

DENA J. KING
UNITED STATES ATTORNEY

_____
JENNY SUGAR
ASSISTANT UNITED STATES ATTORNEY

5